UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CARL SCALISE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-178 |
| | § | |
| ALLSTATE TEXAS LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Factual and Procedural Background

Now before the Court is Defendant Allstate Texas Lloyds' ("Allstate") Motion for Summary Judgment. (Dkt. No. 5). This action is one of many insurance claim disputes arising from a hail storm that hit McAllen area on March 29, 2012. In the present case, Plaintiff Carl Scalise alleges that his McAllen property insured by a policy with Allstate "sustained massive amounts of covered losses in the form of hail, wind and water damages…." (Dkt. No. 1-5 at IV). Plaintiff made a claim under the policy and Allstate timely investigated the claim and tendered payment. Plaintiff disagreed that this payment reflected his total covered damages and invoked the appraisal clause of the policy to determine the amount of loss. Under the terms of that provision, the parties chose their respective "competent and independent" appraisers who then agreed on an umpire to whom the appraisers would submit their differences if they failed to agree. The appraisers inspected the property and exchanged their estimates. Claiming that Allstate's chosen appraiser, Stephen Medeiros, was neither competent nor independent because his estimate ignored "obvious covered damages," Plaintiff attempted to withdraw from the appraisal process and filed this suit against Allstate for breach of contract, breach of the duty of

good faith and fair dealing, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act ("DTPA"). *Id.* at III, V, VI, VIII, XIII.[1] Medeiros and the umpire then agreed on the award and Allstate tendered payment. Allstate now moves for summary judgment on the grounds that its payment of the appraisal award precludes Plaintiff's contractual and extra-contractual causes of action as a matter of law. (Dkt. No. 5). Upon consideration of the Motion and the parties' evidence and responsive briefing, in light of the relevant law, the Court finds that the Motion must be granted for the following reasons.

## II.     Allstate's Motion for Summary Judgment

### A.    Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Where the movant bears the burden of proof because it is asserting an affirmative defense, it must establish "'beyond peradventure *all* of the essential elements of the…defense to warrant judgment in [its] favor.'" *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780

---

[1] Plaintiff also sued Medeiros in state court. (Dkt. No. 1-5). Allstate removed the case to this Court on the grounds that diversity jurisdiction existed absent the improper joinder of this non-diverse Defendant. (Dkt. No. 1). The Court agreed, denied Plaintiff's motion to remand, and dismissed Medeiros as a party to the action. (Dkt. No. 18).

F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.     Summary Judgment Evidence**

Plaintiff owns a residence in McAllen that was covered by an Allstate homeowner's insurance policy for a one-year period beginning March 26, 2012. (Dkt. No. 5, Exh. I). After Plaintiff made a claim under the policy for damage to the property arising from the March 29, 2012 hailstorm, an Allstate adjuster inspected the property and determined that the total covered damages equaled $551.79. *See* (Dkt. No. 15, Ex. D). Allstate subtracted Plaintiff's $500.00 deductible from the total and issued Plaintiff a check in the amount of $51.79 on or around April 18, 2012. *Id.* By letter dated July 30, 2012, Plaintiff's counsel advised Allstate that "[s]ince there is a dispute as to the amount of the loss and/or cost of repair or replacement of the structural portion of this claim," Plaintiff was invoking the appraisal clause of the policy. (Dkt.

No. 5, Exh. A). That provision states in full:

> **Appraisal.** If you and we fail to agree on the actual value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:
>
> a. the full replacement cost of the dwelling.
>
> b. the full replacement cost of any other building upon which loss is claimed.
>
> c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.
>
> If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.
>
> Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

(Dkt. No. 5, Exh. I).

Pursuant to these terms, Plaintiff selected James Ward to serve as his appraiser and Allstate named Medeiros. (Dkt. No. 5, Exhs. A-C). Ward and Medeiros selected Paul Poncio to serve as umpire. (Dkt. No. 5, Exh. C). The appraisers inspected the property and exchanged estimates of Plaintiff's total amount of loss. *See* (Dkt. No. 15, Exhs. C, G). Ward provided an estimate of $56,881.88 and Medeiros calculated the damages at $423.76. *Id.* In a letter dated March 11, 2013, Plaintiff through counsel attempted to withdraw from the appraisal process on the basis that Allstate had breached the appraisal clause requirement that it select a "competent and independent" appraiser. (Dkt. No. 5, Exh. D). Counsel stated that Medeiros' estimate "completely failed to include costs for repair or replacement of obvious covered damage[s]." *Id.*

Within days, on March 19, 2013, Plaintiff filed this suit. (Dkt. No. 1-5).

On April 10, 2013, Poncio rendered his decision, agreed to by Medeiros. (Dkt. No. 5, Ex. E). The decision set the total amount of loss at $9,795.30. *Id.* Allstate subtracted its prior payment and Plaintiff's deductible to reach a final award of $9,243.51, which was issued by check to Plaintiff, forwarded to counsel for Allstate, and then forwarded to Plaintiff's attorney on April 30, 2013. (Dkt. No. 5, Exs. F, G; Dkt. No. 15, Exh. E).

**C.      Analysis**

**1.      Plaintiff's Request under Rule 56(d)**

As an initial matter, the Court addresses Plaintiff's objection to the Motion as "premature," and his request under Rule 56(d) that the Court either defer its consideration of the Motion or allow Plaintiff additional time to conduct discovery on the arguments raised. (Dkt. No. 15); *see* FED. R. CIV. P. 56(d). The Court granted Plaintiff's unopposed request for an extension of time to file his response and also allowed the parties to mediate prior to issuing its ruling. *See* (Dkt. No. 12); 10/09/2013 Minute Entry. Therefore, Plaintiff's request for deferred consideration of the Motion is moot. *See* FED. R. CIV. P. 56(d)(1). Rule 56(d) requires that Plaintiff provide "specified reasons [why he] cannot present facts essential to justify his opposition" to summary judgment absent additional discovery. *See* FED. R. CIV. P. 56(d)(2). Plaintiff's statement, without more, that he needs to obtain the claim file in order to fully respond to the Motion, does not satisfy this standard. (Dkt. No. 15). Moreover, for the reasons explained herein, the claim file would not aid Plaintiff in overcoming Allstate's argument that its payment of the appraisal award disposes of Plaintiff's claims as a matter of law. (Dkt. No. 15). Accordingly, the Court must deny Plaintiff's request for more time to conduct discovery on the issues raised by the Motion.

2.  **Whether Plaintiff May Withdraw from Appraisal Process**

Whether the appraisal award precludes Plaintiff's claims in part turns on whether Plaintiff is bound by that award, a question Allstate asks the Court to resolve in its favor. (Dkt. No. 5). In support of its argument that the award is binding on Plaintiff, Allstate points to the Texas Supreme Court's recognition of a "strong policy in favor of enforcing appraisal clauses in insurance contracts regardless of concerns that may exist about the scope of appraisal." *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, 2010 WL 413687, at *4 (S.D.Tex. Jan. 27, 2010) (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89, 895 (Tex. 2009)). It is well-settled that "the scope of appraisal is damages, not liability," but as the State's highest court has acknowledged, the line between the two "may not always be clear." *Johnson*, 290 S.W.3d at 890. Plaintiff's pleading and response appear to contest the scope of Medeiros' appraisal, but provide little that would enable the Court to draw the line in this case. Plaintiff alleges that Medeiros was not an "independent" appraiser because his estimate mimicked that of the Allstate adjuster "in both scope and price," and that he was not "competent" because his estimate failed to include obvious covered damages to the home despite his knowledge of "the exact damages being appraised and claimed by Plaintiff." (Dkt. No. 15; *see also* Dkt. No. 1-5 at IV, IX).[2] Even assuming that Medeiros' appraisal undervalued or failed to estimate covered damages, his "low-ball" estimate did not determine the award under the policy or in fact—as permitted by the appraisal clause, Medeiros and the umpire agreed to set the amount of loss at a different (and higher) figure. Plaintiff has cited to no authority indicating that a party who contests one appraiser's estimate may then opt to file suit to determine damages rather than complete the

---

[2] Although not alleged in his pleading, Plaintiff's response further contends that Medeiros misrepresented that his company was registered and in good standing with the Texas Secretary of State when in fact it was in tax forfeiture status. (Dkt. No. 15). This does not call into question whether Medeiros provided a competent estimate, and appears to serve no purpose other than to lengthen the list of objections to the appraisal.

appraisal process. If a plaintiff were allowed to invoke appraisal, await the estimates, and then determine whether to risk an unfavorable award or commence litigation, the entire purpose of an appraisal—to resolve the parties' dispute over the amount of loss for a covered claim without incurring the time and expense of litigation—would be vitiated. *See In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (appraisals generally provide less expensive, more efficient alternative to litigation). This Court cannot ignore the Texas Supreme Court's repeated directive that "'[a]n appraisal clause binds the parties to have the extent or amount of the loss determined in a particular way.'" *Johnson*, 290 S.W.3d at 895 (quoting *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)). The determination was made, and Plaintiff is bound by it absent a meritorious request to set it aside. *See TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013) (citing Texas law) (appraisal award will be upheld unless it was made without authority, was the result of fraud, accident, or mistake, or was not made in substantial compliance with terms of contract).

### 3. Whether Appraisal Award Precludes Breach of Contract Claim

Plaintiff does not seek to set aside the award—he filed suit before it was issued. Rather, he brings various claims for affirmative relief against Allstate, including the claim that Allstate breached the insurance contract by failing (1) "to name a 'competent and independent' appraiser" and (2) "to pay for all of the covered damages." (Dkt. No. 1-5 at XIII; Dkt. No. 15). Allstate moves for summary judgment on the basis that its payment of the appraisal award negates this claim as a matter of law, and the Court agrees. (Dkt. No. 5).

With respect to the first basis for Plaintiff's contractual claim, Plaintiff is essentially arguing that a breach occurred because Medeiros' estimate was more akin to that of the Allstate adjuster than to the estimate of Plaintiff's chosen appraiser and/or to the final award. As

Allstate's Motion points out, the divergence is not surprising given that an appraisal is intended to resolve the contracting parties' dispute over the amount of loss. *See* (Dkt. No. 5). The appraisal clause anticipates that this dispute may continue through the appraisal process, and contains a safeguard against what Plaintiff would characterize as a deviation from competence or independence on the part of an appraiser: where the appraisers fail to agree, they submit their differences to the umpire. This is exactly what happened here, and for the reasons explained *supra*, the award constitutes a binding determination of the amount of loss.

Plaintiff appears to argue that the Texas Supreme Court has implied that a breach of contract claim survives payment of an appraisal award by stating that there would be no breach "if the appraisal determined that the full value was what the insurer offered"; in other words, a breach *would* exist if the appraisal award exceeded the initial payment. (Dkt. No. 15) (citing *In re Universal*, 345 S.W.3d at 412). Plaintiff overlooks the context of this statement, which was made in the course of determining whether to grant a writ of mandamus directing the trial court to compel appraisal. *In re Universal*, 345 S.W.3d at 412. The court repeated its observation that denying such relief would "vitiate the insurer's right to defend [against the insured's] breach of contract claim" through the contractually-agreed upon "'method by which to determine whether a breach has occurred.'" *Id.* (quoting *In re Allstate*, 85 S.W.3d 193, 196 (Tex. 2002)). The Court does not read this language as suggesting that the amount of an appraisal award determines breach, but as providing support for Allstate's position that the appraisal process provides an alternative means for determining whether damages have been undervalued. Thus, an insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal. *See Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex.App.-Corpus Christi 2004, pet. denied) (insurer complied with every requirement of contract where it participated in

appraisal process and paid amount set by appraisers and umpire).

Plaintiff also appears to take the position that an insurer materially breaches its contract when it commits bad faith, and therefore the alleged existence of a fact question on whether Allstate acted in bad faith should allow the contractual claims to go forward. (Dkt. No. 15). As explained *infra*, the authority indicates the reverse: the Texas Supreme Court has recognized only that whether a claim for breach of an insurance policy exists may determine whether a bad faith claim may proceed. Therefore, the Court finds this argument unavailing.

The Court recognizes that "'[t]he effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court,'" but here no question as to Allstate's liability under the policy remains because it has paid all damages owed to the extent that coverage existed. *TMM Invs.*, 730 F.3d at 472 (quoting *Lundstrom v. United Servs. Auto Ass'n*, 192 S.W.3d 78, 87 (Tex.App.-Houston [14th Dist.] 2006, pet. denied)). The Court's review of additional, cited case law indicates that where the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of the contract. *See Breshears*, 155 S.W.3d at 343 (insureds "may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal"); *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyd's London*, 459 Fed.Appx. 366, 368 (5th Cir. Jan. 24, 2012) (quoting *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex.App.-Houston [14th Dist.] 2004, no pet.)) (where award is binding and enforceable, timely paid, and accepted, insured is "'estopped by the appraisal award

from maintaining a breach of contract claim against the insurer'"). Nor is the contract breached by the fact that one of the appraisers provided an estimate closer to the initial adjustment than to the appraisal award. The Court must therefore grant Allstate's request for summary judgment on Plaintiff's contractual claim.[3]

### 4. Whether Appraisal Award Precludes Extra-Contractual Claims

#### a. Prompt Payment Violations

Plaintiff asserts a number of extra-contractual causes of action, among them that Allstate violated the prompt payment provisions of Chapter 542 of the Insurance Code, and is therefore liable for the resultant penalties and attorney's fees. (Dkt. No. 1-5 at XIII). Chapter 542 requires that an insurer acknowledge receipt of a claim, begin an investigation, and request documentation from the insured within fifteen days of receiving notice of the claim. TEX. INS. CODE § 542.055. The insurer must notify the insured whether it accepts or rejects the claim within fifteen days of receiving "all items, statements, and forms required by the insurer to secure final proof of loss." *Id.* § 542.056. If the insurer accepts all or part of the claim, it must pay the insured no later than five business days after giving notice of such acceptance to the insured. *Id.* § 542.057. The insurer may not delay paying a claim for more than sixty days after receiving "all items, statements, and forms reasonably requested and required." *Id.* § 542.058. If the insurer is liable on the policy claim, its failure to comply with these timeframes renders it liable for "interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." *Id.* § 542.060.

---

[3] This ruling also disposes of any claim for prejudgment interest. *See Henson v. S. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex. 2000) ("[I]nsurers owe prejudgment interest on top of the policy benefits only if they withheld those benefits, in breach of the insurance contracts."); *Breshears*, 155 S.W.3d at 344 (citing *Henson*) (since there was no breach of contract by insurer after payment of appraisal award, "and consequently no judgment against it on which to base interest calculations," court could not award prejudgment interest).

No dispute exists that Allstate complied with these requirements with respect to its initial payment of Plaintiff's policy claim. The Court recognizes that where an insurer breaches its contract with the insured by underpaying a covered claim, it can be held liable for penalties calculated on the difference between the amount initially tendered and the amount owed, from the time it should have been paid until judgment. *Republic Underwriters Ins. Co. v. Mex-Tex*, 150 S.W.3d 423, 427-28 (Tex. 2004); *see* (Dkt. No. 15). However, *Mex-Tex* was not an appraisal case, and more relevant authority directs that an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process (in this case, invoked by the insured) before paying all covered damages determined by that process. *See*, *e.g.*, *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563-64 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (citing Texas cases) (noting that Insurance Code does not expressly provide deadline for completion of appraisal process and that "Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."). Moreover, even assuming that appraisal awards must be paid within the time periods prescribed by Chapter 542, Allstate complied with § 542.057 by giving simultaneous notice and payment of the award to the insured, and with § 542.058 by paying the award within sixty days of the umpire's decision. For these reasons, the Court finds that summary judgment must be granted on Plaintiff's claims under Chapter 542.

b.  **Breach of the Duty of Good Faith and Fair Dealing**

Plaintiff's claim that Allstate breached its common law duty of good faith and fair dealing requires a showing that Allstate denied or delayed payment of the policy claim after its liability had become reasonably clear, and/or that it failed to reasonably investigate the claim.

11 / 15

*Universe Life Ins. Co. v. Gile*s, 950 S.W.2d 48, 56 (Tex. 1997). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). Allstate contends that Plaintiff cannot satisfy the elements of a bad faith claim because "[a]ll he has shown is a disagreement over the amount of loss which has been resolved via appraisal." (Dkt. No. 17; *see also* Dkt. No. 5). Plaintiff appears to counter that what he is actually alleging is that Allstate's initial payment reflected a substandard investigation that failed to take into account all covered damages—in other words, no good faith dispute existed. (Dkt. No. 15). Regardless of the merits of this contention, the parties submitted the dispute for resolution through appraisal, and Allstate's payment of all covered damages ended the dispute and any bad faith claim arising from it. *See Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, 2011 WL 3236192, at *8 (S.D.Tex. July 27, 2011) ("Because the policy provides the appraisal remedy where parties disagree on the value of the claim, [the insurer] cannot be liable for breach of the duty of good faith by invoking that provision to resolve that claim.")

That Allstate's payment of the appraisal award precludes a bad faith claim also finds support in the Texas Supreme Court's observation, to which Allstate appeals, that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); (Dkt. No. 5). The Court recognizes that "[i]nsurance coverage claims and bad faith claims are by their nature independent." *Id.* at 629 (citing *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)). The duty on the part of insurers to deal fairly and in good faith with their insureds "emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or

created by a contract.'" *Viles*, 788 S.W.2d at 567 (quoting *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)) (emphasis omitted). Thus, "[t]he threshold of bad faith is reached when a breach of contract is accompanied by an independent tort." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). It follows that where an insurer has fulfilled its obligations under the contract, here because it has paid all covered damages determined by the appraisal, it generally has no unfulfilled duty stemming from the parties' special relationship.

The Supreme Court in *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338 (Tex. 1995), recognized two exceptions to the general rule that the absence of a breach of contract claim precludes a bad faith claim: where the insurer commits an "extreme" act that would cause injury independent of the policy claim, or where it fails to timely investigate a claim. *Id.* at 341. With regard to the first, the Fifth Circuit recently noted that "in seventeen years since [*Stoker*] appeared, no Texas court has yet held that recovery is available for an insurer's extreme act," and that "[s]uch case history does not…yield a sound foundation for an *Erie* guess…." *Mid-Continent Cas. Ins. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521 (5th Cir. 2013). Here, Plaintiff has made only those fairly routine allegations of a substandard (albeit timely) investigation and initial undervaluation of his covered claim, the entirety of which was timely paid upon issuance of the appraisal award. Thus, the Court declines to make an *Erie* guess that this case falls within the first exception, and the second exception does not apply. The Court joins the Fifth Circuit and its sister courts who have considered the issue in holding that Allstate's timely payment of the appraisal award, absent a showing of the above-cited exceptions, precludes Plaintiff's bad faith claim as a matter of law. *See Blum's Furniture*, 459 Fed.Appx. at 369; *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F.Supp.2d 642, 649-50 (S.D.Tex. 2012); (Dkt. No. 22, Exs. A-C).

### c.     Statutory Bad Faith

Plaintiff's additional, extra-contractual claims include allegations that Allstate violated Chapter 541 of the Insurance Code and the DTPA by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of…a claim with respect to which the insurer's liability has become reasonably clear," and by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." (Dkt. No. 1-5 at III, V, VIII, XIII); TEX. INS. CODE § 541.060(a)(2), (a)(7); TEX. BUS. & COM. CODE § 17.50(a)(4) (consumer may maintain DTPA action based on use or employment of act or practice that violates Chapter 541).  These statutory bad faith claims are analyzed under the same standard as their common law equivalent. *See Giles*, 950 S.W.2d at 54-55; *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997).  For the reasons explained *supra* and in accordance with the Fifth Circuit and its sister courts, the Court finds that such claims are foreclosed by Allstate's timely payment of all covered damages determined by the appraisal award. *See Blum's Furniture*, 459 Fed.Appx. at 369; *Mag-Dolphus*, 906 F.Supp.2d at 649-50; (Dkt. No. 22, Ex. C).

### d.     Additional DTPA Violation

Plaintiff also brings a DTPA claim based on the allegation that Allstate represented that its services had "characteristics or benefits" that they did not have when it named Medeiros as its "competent and independent appraiser." (Dkt. No. 1-5 at VIII); *see* TEX. BUS. & COM. CODE § 17.46(b)(5).  Plaintiff's response supports this allegation by claiming that Medeiros "performed his appraisal services and presented his estimates under a company, *Medeiros Appraisal Services, LLC* that was 'inactive' with the Texas Secretary of State for failure to pay taxes." (Dkt. No. 15).  Plaintiff fails to allege this in his pleading, and even if he did, the Court agrees with Allstate that Plaintiff cannot proceed with a DTPA claim on this basis. *See* (Dkt. No. 17).

Allstate's selection of Medeiros as its appraiser was not a "service" acquired from Allstate by Plaintiff; rather, each party was permitted under the appraisal clause to select its own appraiser. *See* TEX. BUS. & COM. CODE § 17.45(2) ("service" means "work, labor, or service purchased for lease or use").  Therefore, any alleged misrepresentation by Medeiros that his company was in good standing cannot be attributed to Allstate.  To the extent that Plaintiff has pleaded this claim, Allstate is entitled to judgment as a matter of law.

### III.     Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Allstate's Motion for Summary Judgment is **GRANTED**.  (Dkt. No. 5).

SO ORDERED this 20th day of December, 2013, at McAllen, Texas.

_____
Randy Crane
United States District Judge